WILLIAM ECKERSON, OVERSEER OF THE POOR, v. JOHN MITCHELL, PROSECUTOR.

Argued November 7, 1906—Decided February 25, 1907.

1. Under the "Act concerning disorderly persons" (*Pamph. L.* 1898, *p.* 947, §§ 17, 19), in a proceeding against a husband for willfully neglecting and refusing to provide for his wife, the record of conviction must show that by reason of such neglect the wife is or may become a public charge.

2. Under the "Act concerning disorderly persons" (*Pamph. L.* 1898, *p.* 958, § 21), the taking of an appeal from the decision of the magistrate to the Quarter Sessions does not amount to a waiver of legal errors of procedure committed by the magistrate, so as to bar a review thereof by *certiorari*, unless the appellant has taken the steps necessary to entitle him to a trial *de novo* in the Sessions, or unless any essential steps omitted by him have been waived by the opposite party.

On *certiorari*.

Before Justices FORT, PITNEY and REED.

For the prosecutor, *Samuel Koestler.*

For the respondent, *James C. Connolly.*

The opinion of the court was delivered by

PITNEY, J.   This writ of *certiorari* brings under review certain proceedings had before a police justice of the city of Elizabeth, at the instance of the overseer of the poor, against the prosecutor, under section 17 of the "Act concerning disorderly persons." *Pamph. L.* 1898, *p.* 947. That section enacts that any husband or father who deserts or willfully refuses or neglects to provide for or maintain his wife or other family shall be deemed and adjudged a disorderly person, and whenever any overseer of the poor of the township or city within which the husband or father resides or has his legal settlement, or where the wife or other family reside at the time of the desertion, believes that such person does desert or willfully refuse or neglect to provide for and maintain his family, and that by reason thereof the family may become chargeable to such township or city, it shall be the duty of the overseer to make complaint thereof, under oath, before a magistrate.

The return shows that upon proceedings of this character being taken against the prosecutor a trial was had, and that "the court considered the evidence and thereupon adjudged the defendant to be a disorderly person under the provisions of the 'Act concerning disorderly persons' (*Rev.,* 1898),

and adjudged that he pay to the said Marguerite Mitchell, for her support and maintenance, the sum of $4.50 per week, and enter into bond in accordance with the provisions of said act," &c. At the same time an order was made by the police justice reciting that the overseer had made complaint before him, "charging that John Mitchell willfully neglects and refuses to provide for his wife, and praying that he might be apprehended, agreeably to the provisions of an 'Act concerning disorderly persons.'" And then, after reciting subsequent proceedings, the order declares that the police justice "did adjudge the said defendant guilty of the charge aforesaid, and did adjudge him to be a disorderly person within the meaning of the act aforesaid; and I do order that the said John Mitchell do forthwith, upon notice of this order, pay to the overseer of the poor, for the support and maintenance of said wife, the sum of $4.50, from the day of this order."

The complaint that was made by the overseer at the inception of these proceedings set forth not only that the prosecutor did desert and willfully refuse and neglect to provide for and maintain his wife, but, also, "that by reason thereof his said family may become chargeable to the said city of Elizabeth." There was no finding, however, by the police justice that by reason of the prosecutor's default the wife was likely to become chargeable to the city.

Among other reasons set up as ground for reversing this order, it is asserted that the police justice did not have jurisdiction of the cause. We hold that the overseer's affidavit was in due form, as required by section 17 of the act, and jurisdiction was thereby conferred upon the police justice. We also hold that jurisdiction was not lost by irregular adjournments, nor by irregularity in the bond that was taken from the prosecutor to secure his appearance. If there was any such irregularity, he waived it by appearing and proceeding to trial upon the merits.

Another reason assigned for reversal is that the record of the conviction does not set forth sufficient of the evidence to sustain the findings of the police justice. The point is well

taken, so far as the state of the record is concerned. But counsel for the overseer, in his brief, suggests that the record in this respect is defective. We would, therefore, not reverse on this ground without first granting a rule upon the magistrate for a further return, so as to enable him to certify the evidence upon which his findings were based. This practice is sanctioned by repeated decisions. *South Brunswick* v. *Cranbury,* 23 *Vroom* 298; *North Plainfield* v. *Goodwin,* 43 *Id.* 146; *Rahway* v. *Hunt, ante p.* 116.

It is further urged, however, that the conviction and order are unlawful and defective because they fail to set out any finding that the wife of the prosecutor was or might become chargeable to the city of Elizabeth. Under our decisions this defect is fatal. *Cohen* v. *Camden,* 29 *Vroom* 499; *Gedney* v. *Dey,* 15 *Id.* 576; *Heller* v. *Brown,* 28 *Id.* 634.

But it is insisted by counsel for the respondent that the prosecutor has waived his right to object to legal errors of procedure committed by the police justice, by taking an appeal to the Court of Quarter Sessions. Section 21 of the "Act concerning disorderly persons" (*Pamph. L.* 1898, *p.* 948) provides that either party, upon paying all costs incurred and by filing with the magistrate within five days after the trial before him a written notice of appeal, may appeal to the Court of Quarter Sessions, and may there demand a trial by jury, and said court shall proceed to try the case and to make adjudication and order thereon. Since an appeal of this sort, giving a trial *de novo* upon the merits, is more advantageous to a party who has a meritorious defence than a review of defective proceedings by *certiorari* (for by an appeal the appellant may hope for a final determination in his favor, whereas a reversal on *certiorari* may be followed by further proceedings against him), it seems reasonable to hold that the taking of an appeal amounts to an election of remedies and a waiver of the common law review by *certiorari*. And such seems to be the trend of our decisions. *Moore* v. *Johnson,* 29 *Vroom* 586, 588; *State, Dunn, pros.,* v. *Overseer,* 3 *Id.* 275, 280; *Vannoy* v. *Givens,* 3 *Zab.* 201; *Hurff* v. *Overseer of Camden,* 9 *Vroom* 287, 288.

But in order that the taking of an appeal may amount to such election and waiver, it must, we think, appear that the appellant has taken the steps necessary to entitle him to a trial *de novo* in the Quarter Sessions, or at least that any essential steps omitted by him have been waived by the opposite party. Now, in the case before us, it appears that Mitchell filed a notice of appeal before the magistrate within five days after the trial there had, but that he failed to pay the costs there incurred, and that for this failure his appeal was on motion of the appellee dismissed by the Court of Quarter Sessions. The appellee, now respondent in *certiorari,* having thus chosen to insist that the appeal had not been perfected so as to entitle the appellant to a trial upon the merits, cannot now be heard to say that that appeal operated to waive errors of procedure before the magistrate.

The judgment under review should therefore be reversed.